# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1109 | **DATE** | 7/11/2001 |
| **CASE TITLE** | Reddick vs. Bloomingdale Police Officers et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants McNamara, Stough, Boehne, Christensen, Kowlacki, Goret, Gieske, Kramer and Sode's motion to dismiss counts IV, VI, VII, IX and XIII [269-1] of plaintiff's fifth amended complaint is granted in part and denied in part. The motion to dismiss is granted as to claims against the Firefighters and Paramedics in their official capacity, and in all other respects is denied. Enter Memorandum Opinion and Order.

*Geraldine Soat Brown*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 12 2001 | | 296 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | CM | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| kf | courtroom deputy's initials | FILED FOR DOCKETING 01 JUL 12 AM 8: 19 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SUSAN REDDICK, et al., )
       Plaintiffs, )
        )
     v. ) Case No. 96 C 1109
        )
BLOOMINGDALE POLICE OFFICERS, ) Magistrate Judge Geraldine Soat Brown
  et al., )
       Defendants. )
        )
        )
        )

## MEMORANDUM OPINION AND ORDER

This cause coming to be heard on the Motion to Dismiss Counts IV, VI, VII, IX and XIII of Plaintiff's Fifth Amended Complaint [Dkt #269] filed by defendants Michael McNamara, Allen Stough, Lt. Keith Boehne, Lt. David Christensen, Donald Kowlacki, Fred Goret, Randal Gieske, Al Kramer and David Sode (hereinafter collectively referred to as the "Firefighters and Paramedics"), the Court having reviewed the briefs of counsel and having heard oral argument, said motion is hereby GRANTED IN PART AND DENIED IN PART, as set forth herein.

## PROCEDURAL BACKGROUND

The recent Memorandum Opinion and Order [Dkt #289] denying motions to dismiss by defendant Glen Oaks Hospital and Medical Center discusses the procedural background of this case, and, except as necessary for this Opinion, that background will not be recited here. The Firefighters and Paramedics seek to dismiss five Counts of the Amended Fifth Amended Complaint. Their motion to dismiss Count XIII is moot because the plaintiffs have voluntarily withdrawn that Count.

(Minute Order of March 7, 2001 [Dkt #276].) Likewise, the Firefighters and Paramedics' motion to dismiss Count IX for failure to attach certificate of merit is moot because the plaintiffs have filed such a certificate. (Tr. of April 20, 2001 at 5.) The subjects of the present motion, then, are the following Counts:

Count IV: Plaintiffs assert a claim under 42 U.S.C. §1983, alleging that the Firefighters and Paramedics violated Robert Reddick's rights under the Fourteenth Amendment by failing to prevent or stop others from assaulting and killing Robert Reddick;

Count VI: Plaintiffs assert a claim under 42 U.S.C. §1983 alleging that the Firefighters and Paramedics conspired among each other and with the police officer defendants to seize Robert Reddick, use excessive force on him and to conceal material facts regarding the true events.

Count VII: Plaintiffs assert a claim under 42 U.S.C. §1985 alleging that the Firefighters and Paramedics conspired among each other and with the defendant police officers to violate Robert Reddick's constitutional rights in part due to racial animus, and that in furtherance of that conspiracy they committed a number of acts including falsifying documents and concealing material evidence from the plaintiffs and the judiciary.

Count VII: Plaintiffs assert a claim under Illinois common law for intentional infliction of emotional distress.

The Firefighters and Paramedics' arguments will be discussed as to each Count.

## ANAYLSIS

In his Memorandum Opinion and Order of July 29, 1997 in this case ("1997 Mem. Opinion"), Judge David Coar discussed the standard applicable to a motion to dismiss. 1997 Mem. Opinion, 1997 WL 441328, *3. This Court adopts that discussion, which will not be repeated herein.

## FIREFIGHTERS AND PARAMEDICS' MOTION TO DISMISS CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITY.

The Firefighters and Paramedics originally moved to dismiss the plaintiffs' claims against them in their "official capacity" as "redundant" because, they claimed, the plaintiffs have also sued the Village of Bloomingdale. ("Corrected" Mem. of Law in Supp. of Mot. to Dismiss at 2.) The plaintiffs responded that the claims are not redundant because the Bloomingdale Fire Protection District, not Village of Bloomingdale, is the employer of the Firefighters and Paramedics, and, therefore, a suit against the Firefighters and Paramedics in their "official capacity" is a suit against the Fire Protection District, not the Village. (Pls.' Response to Mots. to Dismiss Am. 5th Am. Compl. at 3.) For reasons relating to the history of this lawsuit, the Bloomingdale Fire Protection District is not a party to the lawsuit in any other capacity.

Bloomingdale Fire Protection District is not a defendant.

. The Fourth Amended Complaint filed in December 1997 included as defendants the Village of Bloomingdale, the "Bloomingdale Fire Department" and the "Fire Department Chief, Richard Randecker." [Dkt #125.] That Complaint alleged that the Firefighters and Paramedics were employed by and acting on behalf of the Village. (4th Amended Complaint ¶ 17.) The only count directed to the Village or the Fire Chief was Count VI, alleging that the Village and the Fire Chief were charged with the training of fire department personnel regarding the use of restraints, pepper

spray, and the arrest of intoxicated persons, and that those defendants' failure to train was in deliberate indifference to the constitutional rights of those with whom the Firefighters and Paramedics came in contact, like Robert Reddick. (*Id*. at ¶¶ 124-134.) Defendant Randecker denied that he held the position of Fire Chief on behalf of the Village. (Randecker's Answer and Affirmative Defenses ¶ 20 [Dkt #127].) He also affirmatively pleaded that he had no supervisory authority over the Paramedics and did not train them with respect to any aspect of medical care. (*Id*. at Affirmative Defenses Count VIII ¶ 3.) The Firefighters and Paramedics denied that the Village operates, controls, or manages the firefighters or paramedics. (Answer to 4th Am. Compl. ¶ 17 [Dkt #136].) They also denied that the Village establishes policies and procedures for the Fire Department. (*Id*. at ¶ 27.)

It appears that when the plaintiffs filed the Fourth Amended Complaint, they believed that the Firefighters and Paramedics were employees of the Village. Apparently, they are employed by the Bloomingdale Fire Protection District (the "District"), which is a separate municipal entity. (Pls.' Reponse to Mots. to Dismiss Am. 5th Am. Compl. at 3.) However, since Richard Randecker had been sued in his official capacity as well as personally, the claim of failure to train in Count VI of the Fourth Amended Complaint was effectively a claim against the District. *See* discussion *below*.

On April 29, 1999, the plaintiffs filed an Agreed Motion to Voluntarily Dismiss Certain Defendants without prejudice, including Richard Randecker. [Dkt # 187.] That motion was granted on April 30, 1999. [Dkt #188.] As a result of the dismissal of Richard Randecker there was no claim against the District in Count VI, the failure to train count, and no claim against the District at all in the Fourth Amended Complaint, except to the extent that the claims against the Firefighters and Paramedics in their official capacity could be deemed claims against the District.

4

Over a year later, in June 2000, when the plaintiffs sought leave to file the Fifth Amended Complaint, they also sought leave to add the Bloomingdale Fire Protection District as an additional defendant in Count V, a revised failure to train count that specifically referred to the District's training of the Firefighters and Paramedics. (Pls.' Mot. for Leave to File 5th Am. Compl., Ex. 1, ¶¶ 34-47 [Dkt #245].) The District objected on the ground that the statute of limitation had run on asserting a claim against it. (Obj. to Pls.' Mot. for Leave to File 5th Am. Compl. at 4 [Dkt #248].) The plaintiffs argued that the April 30, 1999 order dismissing Chief Randecker should be interpreted as dismissal of the claim against him personally but not officially, or, alternatively, the order should be amended. (Reply Mem. in Supp. of Pls.' Mot. for Leave to File 5th Am. Compl. at 13-15.)[1] After briefing and argument, the Court denied the motion to add the District as a defendant in Count V. (Minute Order of Nov. 20, 2000 [Dkt #260].) Thus, the plaintiffs are technically correct. The claims against the Firefighters and Paramedics in their official capacity are not redundant.

The Firefighters and Paramedics' Reply Brief then made a different argument: That because the Court had not permitted the District to be joined as an additional defendant to Count V on statute of limitations grounds, the other claims against the Firefighters and Paramedics in their "official capacity" must also be time-barred. (Reply Br. in Supp. of Mot. to Dismiss at 1-2 [Dkt #283].) However, that argument is likewise incorrect. The District could not be added to Count V because the statute of limitations had run on asserting *that* claim against the District. The claims against the Firefighters and Paramedics in their official capacities have been asserted since the first Complaint was filed in February 1996. (Compl. ¶ 2 [Dkt #1].)

---

[1] Plaintiffs' Reply Memorandum was never recorded on the Court's docket.

It was only at the oral argument on the Firefighters and Paramedics' motion to dismiss that the real issue emerged. The plaintiffs' counsel argued that the plaintiffs may assert an official capacity claim against the individual officers (for which the District would ultimately be liable) without asserting a "failure to train" or "policy and procedure" claim against the District. (Tr. of April 20, 2001 at 22-31.) The Firefighters and Paramedics argued that there cannot be a claim against the officers in their official capacity unless there are allegations of a "policy and practice" by the District. *See Monell v. New York Department of Social Services*, 436 U.S.658 (1978). The Court requested, and the plaintiffs and Firefighters and Paramedics submitted, supplemental briefs on that issue. [Dkt #286] and [Dkt #287].

The plaintiffs have not alleged a claim against the Firefighters and Paramedics in their official capacity.

The plaintiffs cite cases to the effect that a plaintiff may assert a claim against an official in his official capacity, and argue that the ability to assert a claim may not be confused with the ability to prove liability. (Pls.' Resp. to Defts. Bloomingdale Firefighters and Paramedics Mot. to Cite Addl. Authority at 2.) However, the plaintiffs' argument ignores the question of whether the plaintiffs have actually pleaded a claim against the Firefighters and Paramedics in their official capacity in the Amended Fifth Amended Complaint, which is the issue on a motion to dismiss.

In *Monell*, the Supreme Court held:

We conclude, therefore, that a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983.

*Monell*, 436 U.S. at 695. Decisions following *Monell* established the necessary elements of a claim against a municipality under §1983:

6

The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,"; or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

*Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994)(citations omitted).[2]

In his 1997 Memorandum Opinion and Order, Judge Coar explained the difference between a suit against a person in his individual capacity and one in his official capacity:

In official capacity suits, the real party in interest is the governmental entity, and not the named official. The entity's "policy, practice, or custom" must have played a part in the violation of federal law. An official capacity suit is, in all respects other than name, to be treated as a suit against the government. It is not a suit against the officer personally, for the real party in interest is the governmental entity. Personal capacity suits, on the other hand, seek to impose individual liability upon the government officer for actions taken under color of state law. "Thus, while an award of damages against an officer in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."

1997 Mem. Opinion, 1997 WL 441328, *6, n.4 (citations omitted).

The Amended Fifth Amended Complaint does not allege that the allegedly improper actions of the Firefighters and Paramedics were in furtherance of an official policy or custom of the District. Likewise, there are no allegations of a wide-spread practice by the Firefighters and Paramedics amounting to a custom or usage. Nor are there allegations that the Firefighters and Paramedics are policymakers for the District. *See Baxter*, 26 F.3d at 735: "[T]he complaint . . . lacks an allegation that [the defendant] was in a position to make final policy, or any policy for that matter." There is

---

[2] As discussed by Judge Coar in his 1997 Memorandum Opinion, it is also possible to state a claim against a municipality for a "failure to train" its employees. 1997 Mem. Opinion, 1997 WL 44128,*5. Judge Coar found the plaintiffs' allegations in the Fourth Amended Complaint were adequate to state that claim. *Id.* at *5-6. However, as discussed *above*, the plaintiffs dropped that claim against the District with their dismissal of Chief Randecker.

simply no basis alleged for liability on the part of the District. The mere allegation that the Firefighters and Paramedics are being sued in their "official capacity" is insufficient to state a claim against the District. Therefore, the claims against the Firefighters and Paramedics in their official capacity are dismissed for failure to state a claim.

## PLAINTIFFS' COUNTS VI AND VII ALLEGING CONSPIRACY IN VIOLATION OF §§1983 AND 1985(3)

The Firefighters and Paramedics move to dismiss Counts VI and VII on a number of grounds. For the following reasons, that motion is denied.

Plaintiffs adequately allege a conspiracy.

The Firefighters and Paramedics argue that plaintiffs fail to allege the existence of any "meeting of the minds" among the defendants to deprive Robert Reddick of his constitutional rights. However, Counts VI and VII incorporate by reference the allegations of Paragraphs 6 through 16, including Paragraphs 9 through 11, which allege:

> 9. Paramedic McNamara, after consulting with Officers Boenzi, Marker and Kreciak, decided that Mr. Reddick would be taken voluntarily or involuntarily to a hospital for medical treatment.
>
> 10. Mr. Reddick declined medical treatment and asked the Police Officers and Paramedics to leave his home.
>
> 11. Officers Boenzi, Marker and Kreciak, along with Paramedics McNamara and Stough, did not leave the residence. Rather, each agreed to seize Mr. Reddick and forcibly remove him from his house if he did not voluntarily submit himself to medical treatment.

The Amended Fifth Amended Complaint in Paragraph 14 also describes specific actions taken in furtherance of the alleged conspiracy, including forcibly restraining Robert Reddick, placing a foreign object in his mouth, destroying material evidence including the paramedic radio traffic tape,

and falsifying official records. Those allegations are incorporated in Count VII, where the plaintiffs further allege that the defendants conspired to violate Robert Reddick's constitutional rights in part due to racial animus because Robert Reddick was an African American. (Am. 5th Am. Compl. ¶ 54.)

In Count VI, the plaintiffs likewise incorporate Paragraphs 6 through 16 and further allege that the defendants conspired to violate Robert Reddick's constitutional rights and covered up their wrongdoing by creating and/or falsifying official records, deliberately failing to preserve material evidence and providing false documents and testimony in this case. (Am. 5th Am. Compl. ¶¶ 49, 50(i), 51 and 52.) These allegations sufficiently allege a civil conspiracy to violate Robert Reddick's constitutional rights in violation of §1983, and a claim for conspiracy under Section 1985(3). *Chicago Miracle Temple Church, Inc. v. Fox.*, 901 F.Supp. 1333, 1347 (N.D.Ill. 1995); 1997 Mem. Opinion, 1997 WL 441328, *10. In *Barnes v. Clark*, 2001 WL 322568, *5 (N.D.Ill. 2001), cited by the Firefighters and Paramedics, the Court dismissed "vague allegations [that] essentially ask the court to infer that everything unpleasant that happens to Barnes is attributable to somebody's retaliation." The plaintiffs' allegations cannot be so characterized. To plead a conspiracy the plaintiff need only plead "sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically." *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985). The plaintiffs' conspiracy allegations meet this test. Fairly read, they allege that the defendant Firefighters and Paramedics and defendant police officers agreed, on November 20, 1995 after arriving in Robert Reddick's home, to seize Robert Reddick and forcibly restrain him in a way that resulted in his death, and then agreed to cover up their wrongdoing and acted upon that agreement by destroying specific pieces of evidence. This is not simply a bare allegation of conspiracy.

The Firefighters and Paramedics also claim that the conspiracy counts should be dismissed because they are "merged" into the counts that seek to recover for wrongful death and excessive force. However, the Firefighters and Paramedics ignore the potential value of a separate conspiracy claim, including "its evidentiary use and its use in spreading the net of liability to additional persons." *Niehus v. Liberio*, 973 F.2d 526, 532 (7th Cir.1992). In *Niehus*, the Seventh Circuit refused to reverse a decision by the trial court to withdraw the conspiracy count from the jury. At this pleading stage, it cannot be said that the plaintiffs' conspiracy counts are merely seeking a double recovery, as the Firefighters and Paramedics claim. A civil conspiracy claim may be used as a legal mechanism through which to impose liability on each and all of the defendants without regard to the person doing the particular act. *Hostrop v Board of Jr. College Dist. No. 515*, 523 F.2d 569, 576 (7th Cir. 1975), quoting prior authority. In *Hostrop,* the conspiracy claim added nothing because there was only one alleged wrongful act–denying the plaintiff a hearing–which was committed by all the defendants. Here, there are numerous overt acts alleged by the plaintiffs. Under the conspiracy claims, co-conspirators who did not personally commit a particular overt act may be held liable for it.

Plaintiffs' claims regarding the destruction, falsification or
withholding of evidence are not time-barred.

The Firefighters and Paramedics argue that the plaintiffs' claims in Count VI ¶ 50(i) and Count VII ¶ 55(i) that the defendants destroyed, falsified or withheld evidence are time-barred because of the two-year statute of limitations for actions under §1983. That argument is not correct. As stated in the cases that the Firefighters and Paramedics quote, claims under §1983 accrue when the plaintiff knows or should have known that his or her constitutional rights were violated. *See* cases cited in Firefighters and Paramedics' "Corrected" Mem. of Law in Supp. of Mot. to Dismiss

at 5. The Firefighters and Paramedics argue that the plaintiffs knew of the police reports, the radio tapes and other evidence years earlier, but there is nothing alleged in the Amended Fifth Amended Complaint to demonstrate that the plaintiffs knew that the evidence had been falsified, destroyed or withheld at a time which would now bar their claim. The Firefighters and Paramedics' Corrected Memorandum of Law (at 6-7) and Reply Brief (at 8-9) improperly assert facts outside of the Complaint to support a motion to dismiss. Unless the allegations of the complaint conclusively demonstrate otherwise, the date when the cause of action accrues is generally a question of fact not appropriately the subject of a motion to dismiss. *Pucci v. Litwin*, 828 F. Supp. 1285, 1298 (N.D. Ill. 1993).[3]

Plaintiffs' conspiracy claims are not barred by the intracorporate conspiracy doctrine.

The Firefighters and Paramedics claim that the conspiracy counts against them are barred by the intracorporate conspiracy doctrine. The principle of that doctrine is that if the challenged conduct is essentially a single wrongful act by a single business entity, the fact that two or more agents participated in the decision or the act itself will normally not constitute a conspiracy. *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972). First, it is unclear whether the intracorporate conspiracy doctrine bars actions under §1983. The Seventh Circuit has not so held.

---

[3] Furthermore, although it is not necessary to decide at this time, the additional allegations against the Firefighters and Paramedics relating to falsifying or concealing evidence might be deemed to relate back to the allegations of the original Complaint, which alleged that the defendants "covered up their wrongdoing." (Compl. ¶ 75(g).) *See* Federal Rule of Civil Procedure 15(c):

An amendment of a pleading relates back to the date of the original pleading when. . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

*Newsome v. James*, 2000 WL 528475, *14 (N.D.Ill. 2000), discussing cases. As Judge Plunkett

pointed out in *Newsome*, the intracorporate conspiracy doctrine was created to shield corporations

and their employees from conspiracy liability for routine, collaborative business decisions that are

later alleged to be discriminatory. *Id.* at *15. The type of conduct alleged here does not fit that

mold. Furthermore, as the plaintiffs point out, the Firefighters and Paramedics are employees of one

legal entity, the District, who are alleged to have conspired with employees of a separate legal entity,

the Village. The Firefighters and Paramedics cite no authority suggesting that the intracorporate

conspiracy doctrine supports dismissing the conspiracy claims in this situation.

Plaintiffs' Count VI states a claim for conspiracy to violate civil rights.

The Firefighters and Paramedics argue that plaintiffs' Count VI, titled "Conspiracy to

Conceal Facts" fails to state a claim because it fails to allege injury arising from the destruction,

concealing or falsification of evidence. Citing, *inter alia*, *Vasquez v. Hernandez*, 60 F.3d 325 (7th

Cir. 1995), the Firefighters and Paramedics argue that the plaintiffs have not and cannot allege that

the alleged acts denied them access to the courts. The Firefighters and Paramedics' motion must be

denied for two reasons.

First, although Count VI is entitled "Conspiracy to Conceal Facts," the allegations of

violations of Robert Reddick's constitutional rights are not limited to rights associated with access

to the courts. Fairly read, the allegations of Count VI allege a conspiracy by the Firefighters and

Paramedics and others wrongfully to seize, restrain and mistreat Robert Reddick and to cover-up the

alleged wrongdoing. The cover-up, while wrongful in itself, is also one of the overt acts of the entire

conspiracy. In contrast, in *Vasquez*, the plaintiff's only claim against certain of the defendants was

the alleged conspiracy of silence, because those defendants investigated the shooting that injured the plaintiff but had not participated in it.

Secondly, at this pleading stage it cannot be said that there is no set of facts that the plaintiffs could prove consistent with the allegations which would entitle them to relief under the allegations. The plaintiffs allege that the defendants:

> Covered up their wrongdoing by creating and/or falsifying official records and documents. . . .and then deliberately failed to preserve material evidence, including but not limited to, . . . the radio traffic tape communications between the Paramedics and Bloomingdale Fire Protection District. . . .[and]

> provid[ed] false documents and testimony in this cause in order to deny, impede and/or [sic] the Plaintiffs a meaningful opportunity to present to this judiciary the true facts surrounding the defendants' unlawful deprivation of Mr. Reddick's fundamental constitutional rights.

(Am. 5th Am. Compl. ¶¶ 50(i), 52.) On a motion to dismiss, the court must assume that all properly pleaded factual allegations are true. *See* cases cited in 1997 Mem. Opinion, 1997 WL 441328, *3. It simply cannot be said that the plaintiffs could not demonstrate any injury or prejudice to their constitutionally protected rights from the alleged destruction, falsification and/or concealment of evidence.

> The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments. A corollary of this right is that efforts by state actors to impede an individual's access to courts or administrative agencies may provide the basis for a constitutional claim under 42 U.S.C. §1983. . . .[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged.

*Vasquez*, 60 F.3d at 328 (citations omitted).

The *Vasquez* case came before the Seventh Circuit after the trial court granted summary judgment to the defendants, not on the granting of a motion to dismiss. In that case, the plaintiffs were delayed in bringing their claim, but the Seventh Circuit held that ultimately the plaintiffs

obtained the results of an FBI Task Force investigation so that "the delay, albeit frustrating for the Vasquezes, has not been without some benefit for them." 60 F.3d at 329. Here the gravamen of the "concealment" aspect of the plaintiffs' conspiracy count is not a concealment of the facts giving rise to the cause of action resulting in a delay in the bringing of the suit, but rather a destruction, falsification or concealment of evidence which it is intended to prevent or impede a meaningful presentation of the facts in the suit. "A cover-up leads to a denial of access to the courts only where the cover-up was to some extent successful." *Kies v. City of Aurora*, — F. Supp. 2d —, 2001 WL 629701,*3 (N.D.Ill. 2001), citing *Vasquez*.[4] If the plaintiffs can prove that the defendants committed the alleged wrongful acts and that, as a result, the plaintiffs' ability to seek redress was, in fact, impeded or prevented, presumably the plaintiffs would have a right to recover for the violation of their constitutional rights. It is simply too early to say whether, under the facts alleged, plaintiffs will be able to prove an injury.

## COUNT IV: FAILURE TO PREVENT A KILLING

Count IV alleges that the Firefighters and Paramedics observed the attack on Robert Reddick, and had a duty to stop it but failed to do so, in violation of Robert Reddick's constitutional rights. The plaintiffs claim to bring that count under 42 U.S.C. §1983. The Firefighters and Paramedics argue that Count IV is in reality a claim under 42 U.S.C. §1986 for failure to prevent a conspiracy, which, they claim, is time-barred. Without citing any authority, they argue that "the failure of the

---

[4] The Court in *Kies* dismissed a claim of conspiracy to cover up a police officer's excessive force, where the plaintiff alleged merely that the plaintiff's complaint to the police department about the arresting officer's use of excessive force was sustained by the police force's internal investigation, but the defendant police captain rejected the findings and ordered the investigating officer to reopen the investigation and ask new questions of various witnesses. 2001 WL 629701, *1, 2.

14

Bloomingdale Firemen/EMTs to prevent Mr. Reddicks [sic] death can only be pled in the form of a §1986 action." ("Corrected" Mem. of Law in Supp. of Mot. to Dismiss at 11.)

The Firefighters and Paramedics' motion is denied. As the plaintiffs note, the Firefighters and Paramedics' earlier motion to dismiss the plaintiffs' "Failure to Prevent a Killing" count was denied by Judge Coar. 1997 Mem. Opinion, 1997 WL 441328 *12. The Firefighters and Paramedics argue now that at the time of the motions to dismiss considered by Judge Coar, they only argued that the claim was deficient for failure to comply with the Illinois Mental Health Code. Apparently the Firefighters and Paramedics had not thought of the §1986 argument. They cite no authority that permits a party to raise grounds for motions to dismiss *seriatim*, and more than three years after the earlier adverse ruling. However, in any event, the Firefighters and Paramedics' §1986 argument fails. The Firefighters and Paramedics cite no authority that the allegations pleaded by the plaintiffs fail to state a cause of action under §1983. They cite no authority holding that such allegations *must* be pleaded as failure to prevent a conspiracy under §1986, as opposed to the plaintiffs' pleading of failure to prevent a killing, whether or not there was a conspiracy. Finally, even if the Firefighters and Paramedics were correct that the "Failure to Prevent a Killing" count is actually a claim under §1986, which has a one-year statute of limitations, the current count is not time-barred. The plaintiffs pleaded that claim along with a separate conspiracy claim in their original Complaint filed in February 1996, less than one year after the death of Robert Reddick. (Compl. ¶¶ 74-81.) The current additional allegations–that Robert Reddick choked, and that a towel and foreign object were used–are not new claims, and clearly relate back to the original pleading. See Federal Rule of Civil Procedure 15(c), quoted in footnote 2 *supra*.

## THE FIREFIGHTERS AND PARAMEDICS' MOTION
## TO DISMISS ON THE BASIS OF QUALIFIED IMMUNITY.

The Firefighters and Paramedics contend that Count IV should be dismissed because they are entitled to qualified immunity, arguing that as of November 1995 the Seventh Circuit had never held that non-police defendants were required to intervene to prevent citizens from excessive force administered by police officers. For the following reasons, that motion is denied.

It is important to note that Count IV differs from Count II, which alleges that the Firefighters and Paramedics, as well as the police officers, used excessive force. Judge Coar previously denied the Firefighters and Paramedics' motion to dismiss that claim on the basis of qualified immunity.[5] In Count IV, the plaintiffs initially incorporate the allegations of ¶¶ 6-16, which allege, *inter alia*, that paramedics McNamara and Stough agreed with the police officers to seize Robert Reddick forcibly and remove him from his house. Count IV further alleges that the Firefighters and Paramedics observed the attack on Robert Reddick, including his being subjected to pepper spray and choked, and the course of events that led to his death; that the Firefighters and Paramedics had an opportunity and duty to stop the injury or death; and that they failed to take action. The Firefighters and Paramedics argue that "they had no affirmative duty at law, much less any

---

[5] In denying the previous motion to dismiss, which had argued that there was no caselaw stating that placing a person in a prone position while hogtied is a constitutional violation, Judge Coar stated:

> This argument misses the mark. Plaintiffs allegations do not relate merely to the manner in which Reddick was restrained, but also to the *effect* of that restraint. Part of plaintiffs' claim is that Reddick had a right not to be restrained in such a way so as to bring about his death or the likelihood thereof. Surely, defendants do not argue that this is not a clearly established right.

1997 Mem. Opinion, 1997 WL 441328, *10, emphasis in original.

constitutional duty to intervene to protect" Robert Reddick. ("Corrected" Mem. of Law in Supp. of Mot. to Dismiss at 12.)

The Supreme Court in *Saucier v. Katz*, ----U.S.----, 121 S.Ct. 2151 (June 18, 2001), recently reviewed the analysis to be followed by lower courts in determining whether qualified immunity applies:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
>
> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . .
>
> . . . The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

----U.S. at ----, 121 S.Ct at 2156, internal citations omitted.

On this motion to dismiss, the Court must take all well-pleaded allegations as true. The allegations of the plaintiffs' Count IV allege that the Firefighters and Paramedics watched and did nothing as the police and/or some of their own colleagues beat and choked the strapped-down Robert Reddick resulting in his death. The Firefighters and Paramedics argue that their alleged inaction cannot be a constitutional violation because they have no duty to intervene in this situation. In effect, the Firefighters and Paramedics contend that they can be present on a scene in their role as employees of the District watching other state actors cause the death of an individual and yet may stand by idle, because "it's not their job." District Judge Bucklo rejected a similar argument by paramedics of the City of Chicago in a case with facts strikingly similar to the present case, calling it "an argument of breathtaking cynicism." *Ramirez v. City of Chicago*, 82 F.Supp. 2d 836, 839 (N.D.Ill. 1999). Judge Bucklo held that the paramedics, who are "public employees . . . dispatched

specifically to aid [the plaintiff]," had a constitutional duty to aid him when the police defendants, also public employees, took him into custody and he was injured in the process. *Id.*[6]

Judge Bucklo's comment and holding applies equally, or perhaps with even greater force, to this case. Notwithstanding the fact that there are numerous cases holding that police officers have a constitutional duty to intervene where another police officer is using excessive force (*see, e.g., Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), and cases cited therein), the Firefighters and Paramedics argue that no Seventh Circuit case has directly addressed the issue of whether *non-law enforcement* officers have a constitutional duty to protect a civilian from excessive force. That argument overlooks the plain meaning of cases such as *Salazar v. City of Chicago*, 940 F. 2d 233 (7th Cir. 1991), where the Seventh Circuit considered the liability of paramedics for failure to treat a defendant taken into police custody:

> Although the state has no general constitutional duty to provide rescue services, the government may not cut off all sources of private aid or self-help, and then decline to provide replacement services. If Salazar was in custody from the time the paramedics arrived–that is, if he was not free to seek other forms of assistance–then the paramedics might be liable for violating Salazar's right to due process by failing to treat his injuries.

940 F. 2d at 237, citations omitted. The plaintiff in *Salazar* was injured in a car accident before being taken into custody, but the constitutional obligation should apply *a fortiori* where the need for

---

[6] The *Ramirez* opinion was a ruling on a motion to dismiss a complaint which in essence alleged the following facts. The Chicago police were called to a bar where Omar Ramirez had been involved in a fight. Ramirez had been using drugs and acting wildly, jumping out a window and fracturing a heel. The police handcuffed Ramirez behind his back, dropped him into the street face down while cuffed, hit him and otherwise assaulted him and allowed others to assault him. When the defendant paramedics arrived they refused to treat Ramirez or transport him in their ambulance to a hospital with a trauma center. Instead, Ramirez was put on his belly in a squadrol and driven unsupervised to a hospital with no trauma center. He appeared dead on arrival and was pronounced dead sixteen minutes later. The cause of death was asphxiation from being handcuffed while intoxicated on alcohol and cocaine.

medical aid arises from injuries being imposed by another state actor employing unconstitutional excessive force.

Contrary to the Firefighters and Paramedics' argument, it is not necessary to find that every municipal employee from janitor to librarian would have a duty to stop excessive force, in order to deny their motion to dismiss. *See* Reply Br. in Supp. of Mot. to Dismiss at 14. As Judge Bucklo noted in *Ramirez*, the Fire Department of the City of Chicago and its paramedic employees are designated with the responsibility to provide medical care for persons in need. They, therefore, had a constitutional duty to provide medical care for the plaintiff in police custody. 82 F.Supp. 2d at 839. The same is true of the Firefighters and Paramedics employed by the District.

The Firefighters and Paramedics' reliance on *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) and *Sheik-Abdi v. McClellan*, 37 F.3d 1240 (7th Cir. 1994), is misplaced. *Byrd* is a seminal case holding that police officers have a duty to intervene when a fellow police officer is summarily punishing a civilian. There is no support in *Byrd* for the limitation which the Firefighters and Paramedics suggest, that the duty to intervene applies only to police officers. Indeed, the statement of the Seventh Circuit that such a duty also applies to nonsupervisory officers who are responsible for the "reasonably foreseeable consequences of the neglect of their duty" (446 F.2d at 11), supports a claim against Firefighters and Paramedics who neglect their duty to provide medical aid for those in need. Likewise, *Sheik-Abdi* does not support the Firefighters and Paramedics' motion to dismiss. In that case, the Seventh Circuit held that paramedics could not be liable for a decision by police officers to arrest the plaintiff, even if the arrest was made without probable cause after the paramedics summoned police assistance, because the paramedics did not have authority to and did not participate in the decision to arrest the plaintiff. 37 F.3d at 1248. That case is far from the allegations of Count

IV here. Here, the allegations relate directly to a matter as to which the Firefighters and Paramedics have training, authority and responsibility: treating the medical condition of Robert Reddick.

In summary, the allegations of Count IV support a constitutional duty on the part of the Firefighters and Paramedics to intervene. The second part of the inquiry required by *Saucier v. Katz* is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." ----U.S. at-----, 121 S.Ct at 2156. Again, in *Ramirez,* Judge Bucklo, citing *Salazar* and *DeShaney v. Winnebago Dep't of Social Services*, 489 U.S. 189 (1989) (both cases decided prior to 1995), found no difficulty rejecting an argument of qualified immunity advanced by the paramedics:

> [I]t would have been apparent to a reasonable Fire Department paramedic that he had the duty to provide medical care to a person in the custody of the police. . . . The paramedics' arguments to the contrary are tortured, implausible, or have been expressly rejected by the Supreme Court. The Constitution does not always require the decent thing; sometimes it even protects abhorrent behavior, but not here. In this case, a reasonable person would have known that the right thing was also demanded by the law.

82 F. Supp.2d at 841.

The Firefighters and Paramedics' motion to dismiss based on qualified immunity is denied.

## PLAINTIFFS' COUNT VIII FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The Firefighters and Paramedics argue that Count VIII, asserting a claim by Robert Reddick's widow Susan and by or on behalf of his children Janice, Robin and Jacob, for intentional infliction of emotional distress, fails to state a claim under Illinois law. Judge Coar's 1997 Memorandum Opinion discussed the elements of that cause of action:

> The elements of intentional infliction of emotional distress in Illinois are: (1) the defendant's conduct was extreme and outrageous; (2) the defendants intended to inflict severe emotional distress or knew there was a high probability that the conduct

would cause such distress; and (3) the defendant's conduct did, in fact, cause severe emotional distress.

1997 Mem. Opinion, 1997 WL 441328, *8. Judge Coar dismissed the plaintiffs' count for intentional infliction of emotional distress because it failed to plead the element of intent, but granted leave to amend to plead that element. *Id.* The current Count VIII adds the allegation that the defendants' actions were taken with the intent of, or in reckless disregard of, causing severe emotional distress. (Am. 5th Am. Complaint ¶ 63.) Accordingly, the plaintiffs' Count VIII states a claim for intentional infliction of emotional distress.

The Firefighters and Paramedics' motion to dismiss not only completely ignores Judge Coar's prior Memorandum Opinion, which is the law of this case,[7] but argues, incorrectly, that an intentional infliction of emotional distress claim requires that the plaintiffs establish that they were in the "zone of physical danger." As indicated in the quotation from *Rickey v. Chicago Transit Authority*, 457 N.E. 2d 1, 5 (Ill. 1983), cited in the Firefighters and Paramedics' "Corrected" Mem. of Law in Supp. of Mot. to Dismiss at 14, the "zone of physical danger" element is required for a claim of *negligent* infliction of emotional distress, which the plaintiffs have not sought to assert. Likewise, *Maness v. Santa Fe Park Enterprises, Inc*, 700 N.E.2d 194 (Ill. App. 1998), also discusses the "zone of physical danger" element only in connection with the plaintiff's claim there for negligent infliction of emotional distress. *Id.* at 200. The elements of an intentional infliction of emotional distress claim set out in *Maness* are as described by Judge Coar and quoted *above*. 700 N.E.2d at 200.

The Firefighters and Paramedics' motion to dismiss Count VIII is denied.

---

[7] "[T]he law of the case doctrine in these circumstances reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997).

## CONCLUSION

For the foregoing reasons, the Bloomingdale Firefighters and Paramedics' Motion to Dismiss is GRANTED as to claims against the Firefighters and Paramedics in their official capacity, and in all other respects is DENIED.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED:   July 11, 2001**