Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1109 | **DATE** | 3/28/2003 |
| **CASE TITLE** | Reddick vs. Bloomingdale Police | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]   For the reasons set out in the Memorandum Opinion and Order, Plaintiffs' Motion for Discovery Sanctions  Directed Against Glen Oaks Medical Center [347-1] is granted, and sanctions are imposed as set out in the Memorandum Opinion and Order. Enter Memorandum Opinion and Order. *Geraldine Soat Brown* |
| (11) | ☐ | [For further detail see order (on reverse side of/attached to) the original minute order.] |

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 01 2003 | |
| | Notified counsel by telephone. | date docketed | 375 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/28/2003 | |
| MW | courtroom deputy's initials | date mailed notice | |
| | | MW | |
| | | mailing deputy initials | |

U.S. DISTRICT COURT

03 APR -1 AM 11: 19

Date/time received in central Clerk's Office

SUSAN REDDICK, et al., )
        Plaintiffs, )
 )
 )
v. )   **Case No. 96 C 1109**
 )
BLOOMINGDALE POLICE OFFICERS, )   **Magistrate Judge Geraldine Soat Brown**
et al., )
        Defendants. )
 )
 )
 )

## MEMORANDUM OPINION AND ORDER

This cause coming to be heard on Plaintiffs' Motion for Discovery Sanctions Directed Against the Glen Oaks Medical Center [dkt # 347], the parties and former counsel having submitted briefs on the motion [dkt## 337, 347, 351, 372], for the following reasons, the motion is hereby GRANTED.

### INTRODUCTION

After learning for the second time that, despite representations to the contrary, GlenOaks Medical Center (hereinafter, "GlenOaks") knew the location of a sought-after witness, and that GlenOaks' counsel even had interviewed her, Plaintiffs moved for sanctions against GlenOaks under Fed. R. Civ. P. 37. Plaintiffs argue that GlenOaks and its counsel have demonstrated a pattern of evasive discovery tactics including hiding the location of documents and witnesses damaging to GlenOaks' position, and they ask this court to sanction GlenOaks for its conduct. After a careful review of the complicated and lengthy record, this court finds that GlenOaks and its counsel have failed to abide by their obligations under the Federal Rules of Civil Procedure and the Local Rules

1

*375*

of the Northern District of Illinois, have hindered Plaintiffs' access to discoverable information, and have hindered the expeditious and just resolution of this case. Sanctions are imposed accordingly.

## FACTUAL AND PROCEDURAL HISTORY

This case has a long and complicated history, a thorough understanding of which is critical to the determination of the issues presented by Plaintiffs' motion. This lawsuit began upon the filing of Plaintiffs' first complaint on February 26, 1996. (Compl.)[Dkt# 1.] While the details of Plaintiffs' claims have evolved over the eight years since the lawsuit began, Plaintiffs essentially seek to recover against GlenOaks and various other defendants for the November 20, 1995 death of Robert Reddick, alleging among other things that Reddick did not receive proper medical care at GlenOaks and that he died as a result. (Am. Fifth Am. Compl. ¶¶ 82-83, 89.)[Dkt# 259.]

At the heart of the discovery between Plaintiffs and GlenOaks, therefore, are the substance of documents and the testimony of witnesses regarding what happened to Reddick at GlenOaks the night that he died. The GlenOaks employees working in or around the emergency room that night included Bernard Bibbs, Pamela Quinn and Cynthia Schultz. (See Pls.' Mot. Sanctions at 2-3.)[Dkt# 347.] At issue in Plaintiffs' motion is the propriety of GlenOaks' disclosures of information concerning these three individuals.[1]

---

[1] Complicating the record is the fact that GlenOaks' first counsel, lawyers from the firm of Ungaretti & Harris, withdrew from this action and were replaced by lawyers from the firm of Donohue Brown Mathewson & Smyth on May 30, 2001 (the "Donahue Firm"). (See May 30, 2001 Minute Order.)[Dkt# 290.] Under Local Rule 83.16(c) of the Northern District of Illinois, only individual attorneys, not law firms, are permitted to appear on behalf of parties. However, for purpose of simplifying this opinion, the attorneys who appeared on behalf of GlenOaks are identified by their firm, i.e., Ungaretti & Harris, or the Donohue Firm. However, the individual attorneys bear responsibility for their actions or inactions.

During the November 26, 1996 scheduling conference in this case, the judge then presiding[2] expressly opted into the automatic initial disclosure provisions of Rule 26(a)(1) for this case, and set February 1, 1997 as the deadline by which the parties were to make their initial disclosures. (Nov. 26, 1996 Minute Order.)[Dkt #28.] Under the version of Rule 26(a)(1) then in effect, the parties were to disclose among other things, the identification of all persons likely to have discoverable information relevant to the factual dispute between the parties, "whether or not their testimony will be supportive of the position of the disclosing party." Fed. R. Civ. P. 26(a)(1) Advisory Committee Notes, 1993 amendments. The parties were also obligated to disclose the nature and location of potentially relevant documents and records. (Id.)

In January, 1998, Plaintiffs served their first set of documents requests upon GlenOaks. Request No. 15 stated: " Produce all written or recorded statements taken from any person who claims to have knowledge of any fact(s) relating to the November 20, 1995 occurrence involving Robert Reddick." (First Request Produc. Docs., Ex. D to Pls.' Resp. Deft.'s Mot. Leave Depose Pamela Quinn.)[Dkt# 222.] Request No. 53 sought "all statements, whether written or recorded, taken from any person who claims to have knowledge of the facts related to this lawsuit." (Id.)

Throughout 1998 and 1999 the parties exchanged additional discovery requests and responses and undertook substantial deposition discovery. It appears that counsel for the parties cooperated and worked together to arrange for the depositions of witnesses requested by a party. During that time, Plaintiffs asked GlenOaks on several occasions for the depositions of GlenOaks employees Bernard Bibbs and Cynthia Schultz. (See Jan. 27, 1999 and Mar. 25, 1999 letters from P. Ouimet to S. Valukas, Ex. 4 to Pls.' Mot. Sanctions.) Bibbs had been "involved in efforts to restrain the

---

[2] Five different judges have entered orders in this case.

decedent at the hospital," and Schultz was an emergency room technician who assisted in GlenOaks'

emergency room the night that Reddick died. (GlenOaks' Mot. Protective Order and Strike Aff.

Bernard Bibbs (hereinafter GlenOaks' Mot. Strike) at 3)[Dkt# 297]; GlenOaks' Reply Supp. Request

Withhold Produc. Certain Docs. at 1.)[Dkt# 317.] On April 1, 1999, counsel for GlenOaks advised

Plaintiffs that after making "all reasonable efforts to contact" Bibbs and Schultz, they had been

unsuccessful in that effort. (April 1, 1999 letter from S. Valukas to P. Ouimet, Ex. 5 to Pls.' Mot.

Sanctions.) Counsel for GlenOaks provided the address where Bibbs "may reside," an address and

telephone number of a Bibbs family member, and the "last known address" of Schultz whose

telephone number was "unknown." (*Id.*) GlenOaks' counsel further invited Plaintiffs "to take any

necessary steps to schedule their depositions." (*Id.*)

Shortly thereafter, Plaintiffs served a series of document requests on GlenOaks, including

their Fourth Request to Produce:

> Produce any and all documents or other materials contained in the
> Glen Oaks Medical Center's Risk Management Department files
> which concern or relate to: (a) Robert Reddick, (b) the care and
> treatment of Robert Reddick at GOMC on November 20, 1995, (c)
> the actions of any hospital personnel or third parties before, during or
> after the death of Robert Reddick on November 20, 1995.

(Pls.' Fourth Request Produce Docs., Ex. C to Pls.' Mot. Compel Compliance Outstanding Fact

Discovery.)[Dkt# 194.] After receiving no response from GlenOaks to this request and three others,

Plaintiffs moved to compel GlenOaks' response. (Pls.' Mot. Compel Compliance Outstanding Fact

Discovery.) In part motivating the particular discovery request and the corresponding motion to

compel was Plaintiffs' discovery through their own investigation of a previously undisclosed fact

witness, Pamela Quinn, and a previously undisclosed report authored by Quinn regarding Reddick's

4

death at GlenOaks. (*See* Pls.' Sur-response Opp'n. GOMC's Request Withhold Produc. Schultz Docs. at 14.)[Dkt# 326.]

After substantial briefing on the issue, and the belated creation of a privilege log identifying the documents GlenOaks sought to withhold, GlenOaks was ordered to produce documents responsive to Plaintiffs' discovery requests, including the report authored by Quinn (hereinafter "the Quinn Report"). (*See* Aug. 6, 1999 Minute Order.)[Dkt# 219.]   The Quinn Report, titled "Assessment & Referral, Departmental Action Form," is dated November 20, 1995, the night that Reddick died. (Quinn Report, Ex. 1 to Pls.' Mot. Sanctions.) In the report, Quinn recorded what she witnessed that night as well as her several concerns about it including, "the patient being restrained and not medically monitored . . . , paramedics being unconcerned that a [patient's] hands are blue while handcuffed . . . , [and a] lack of awareness that chemical dependency is a disease, not a moral deficiency." (*Id.*) The report was signed by Quinn's manager, Debra McKenzie, and noted discussions about Quinn's concerns with "Scott and Kathy." (*Id.*) Like Pamela Quinn, none of the persons listed in the report had been previously disclosed by GlenOaks.

In December, 1999, Quinn's former supervisor at GlenOaks, Debra McKenzie, was deposed. (McKenzie Dep., Ex. 2 to Pls.' Mot. Sanctions.) McKenzie testified that she had no recollection of the Quinn Report or of speaking with anyone other than Scott and Kathy about it. (*Id.* at 28.) In December, 1999, over Plaintiffs' objections, GlenOaks was granted leave to depose Quinn. (Dec. 21, 1999 Minute Order.)[Dkt# 224.]

In late 1999 and throughout 2000, the parties seemed to be gearing up for trial. On December 17, 1999, Plaintiffs' counsel wrote to GlenOaks' counsel regarding the presentation of witnesses at trial, and asked GlenOaks' counsel to identify whom it represented in that regard. (Dec. 17, 1999

letter from P. Ouimet to S. Valukas, attached to Submission GlenOaks' Former Counsel.)[Dkt# 337.] On December 27, 1999, then-counsel for GlenOaks, Ungaretti & Harris, responded that it represented "all current and former employees of GlenOaks Hospital involved in the care and treatment of Robert Reddick or referenced by any witness or document produced in this litigation." (Dec. 27, 1999 letter from S. Valukas to P. Ouimet, attached to Submission GlenOaks' Former Counsel.) On October 3, 2000, Plaintiffs filed their Amended Fifth Amended Complaint, which included a count alleging conspiracy to conceal evidence, and referred to information obtained following production of the Quinn Report. (Am. Fifth Am. Compl. ¶¶ 90-99.)[Dkt# 259.]

On October 2, 2000, Christine Rendl, Regional Claims Coordinator for the Risk Management Department of Adventist Health System,[3] located Bibbs, at one of the addresses that GlenOaks earlier had provided to Plaintiffs. (GlenOaks' Resp. Pls.' Mot. Sanctions at 3.)[Dkt# 351.] She spoke to him about his recollections of the night Robert Reddick died, and sent an e-mail about this contact. (E-mail from C. Rendl to M. A. Moore, Ex. 15 to Pls.' Mot. Sanctions.) After speaking with Bibbs, Rendl reported the contact to Ungaretti & Harris. (Rendl Suppl. Aff. at 2, Ex. 3 to GlenOaks's Resp. Pls.' Mot. Sanctions.) GlenOaks did not, however, supplement its disclosure regarding Bibbs' whereabouts.

In early 2001, Rendl again set about finding a previously unlocated witness, Cynthia Schultz. (Resp. Pls.' Mot. Sanctions at 5.) Upon locating Schultz, Rendl informed Ungaretti & Harris of the contact. (*Id.* at 6.) Shortly thereafter, Stephen Huang, then an associate at Ungaretti & Harris, spoke with Schultz. (*Id.*) In March, 2001, Huang used his handwritten notes to summarize the discussion

---

[3] Adventist Health Systems apparently is the corporate parent of GlenOaks. (Submission GlenOaks' Former Counsel at 5.)

first in a draft letter and then in a final letter to Joan Parody at Adventist Health System. (GlenOaks'
Reply Supp. Request Withhold Produc. Certain Docs. at 1.) Although counsel for GlenOaks
interviewed Schultz at considerable length, GlenOaks did not supplement its disclosure regarding
Schultz's whereabouts.

At the May 30, 2001 status hearing, attorneys from Donohue Brown Mathewson & Smyth
(hereinafter "the Donohue Firm") were granted leave to substitute for attorneys from Ungaretti &
Harris as counsel for GlenOaks. (May 30, 2001 Minute Order.) The next month, Plaintiffs' counsel
contacted Bibbs. (Pls.' Resp. GlenOaks' Motion Strike Bernard Bibbs' Aff. and for Protective Order
(hereinafter, "Plaintiffs' Resp. Mot. Strike") at 2.)[Dkt# 300.] Plaintiffs' investigator, Mort Smith,
first found Bibbs in June, 1999, just weeks after GlenOaks reported being unable to contact him, and
again located Bibbs for Plaintiffs' counsel in June, 2001. (Smith Aff. at 1-2, Ex. 2 to Pls.' Resp.
Mot. Strike.) Investigator Smith testified that during both contacts he made with Bibbs, Bibbs
reported that he was unrepresented by counsel. (*Id.* at 1-2.)

On June 15, 2001, Bibbs met with counsel for Plaintiffs. (Ouimet and Partelow Affs., Exs.
10 and 11 to Pls.' Resp. Mot. Strike.) Bibbs recalled for Plaintiffs' counsel the events the night that
Reddick died, and he executed an affidavit attesting to his recollection. (Bibbs Aff., Ex. 8 to Pls.'
Mot. Sanctions.) Pursuant to Rule 26(c), Plaintiffs produced the Bibbs affidavit to all parties ten
days later. (June 25, 2001 letter from P. Ouimet to counsel, Ex. 12 to Pls.' Resp. Mot. Strike.) Upon
receipt of the affidavit, GlenOaks' new counsel, the Donohue Firm, wrote to Plaintiffs' counsel
alleging that because the Donohue Firm represented Bibbs, Plaintiffs' *ex parte* communications with
him had violated professional conduct rules. (June 28, 2001 letter from S. Arrigo to J. Partelow, Ex.
13 to Pls.' Resp. Mot. Strike.) On July 7, 2001, GlenOaks filed a motion for sanctions against

Plaintiffs' counsel for the contact, asking that the court to strike the affidavit and issue a protective order preventing any further such communication. (GlenOaks' Mot. Strike.) In support of its argument, GlenOaks relied on Rendl's undisclosed October, 2000 communication with Bibbs, and Ungaretti & Harris' December 27, 1999 letter stating that counsel for GlenOaks represented all current and former GlenOaks employees. (*Id*.)[4]

After briefing and oral argument on the issue, this court denied GlenOaks' motion, finding it frivolous, and stating that GlenOaks could not "unilaterally impose an attorney-client relationship without the consent of the supposed client." (Tr. Sept. 21, 2001 at 4-5, Ex. 10 to Pls.' Mot. Sanctions.)[5] Moreover, this court stated:

> Mr. Bibbs is clearly an important and material witness whose deposition the plaintiffs had sought to take. In violation of its duties under Federal Rule of Civil Procedure 26(e)(2), to seasonably amend its prior response to discovery, after a party learns of additional or corrective information that has not otherwise been known to the other party, Glen Oaks left the plaintiffs with the impression that Glen Oaks had no idea where Bibbs was, and Glen Oaks made no effort to schedule the deposition of their so-called client. ... [C]oncealing the

---

[4] Although they disagree as to its effect, both Plaintiffs and the Donahue Firm characterize December 27, 1999 letter by Ungaretti & Harris as intending to state the sweeping position that counsel for GlenOaks represents *all* current and former GlenOaks employees with regard to this litigation. Ungaretti & Harris, however, states that the letter actually was written in response to Plaintiffs' December 17, 1999 request regarding producing witnesses at trial. (Submission GlenOaks' Former Counsel at 12.) That is a much more plausible interpretation. Regardless, this court twice rejected GlenOaks' argument that its counsel could unilaterally assert representation of *all* former employees like Bibbs or Schultz, so as to preclude any contact by Plaintiffs' counsel. (Tr. Oct. 9, 2001. at 3-4, Ex. 11 to Pls.' Mot. Sanctions; Tr. Feb. 4, 2002 at 10, Ex. 12 to Pls.' Mot. Sanctions.)

[5] The frivolous nature of GlenOaks' motion against Plaintiffs' counsel is confirmed by the statements of its former counsel. Ungaretti & Harris states, "GlenOaks never retained counsel for their personnel." (Submission GlenOaks' Former Counsel at 3.) Ungaretti & Harris further states, "Plaintiffs vigorously maintain that they were free to contact Bibbs or Schultz after April 1999. We agree." (*Id.* at 6.)

> whereabouts of a material witness whom Glen Oaks' counsel now claims is and was their, quote, 'client,' close quote, is a serious breach of professional responsibility to the court as well as opposing counsel.

(*Id.* at 5-6.) GlenOaks was ordered to submit a statement as to why it should not be sanctioned under Federal Rule of Civil Procedure 11 for bringing a frivolous motion or under Federal Rule of Civil Procedure 37 for failing to advise Plaintiffs in October, 2000 that it had located Bibbs. (*Id.* at 6.) The Donohue Firm filed such statement on behalf of itself and GlenOaks on September 28, 2001. (Statement GlenOaks and its Counsel.)[Dkt# 309.] At the subsequent hearing on the issue, this court reaffirmed its finding that counsel for GlenOaks never represented Bibbs, and noted the serious question under Local Rule 83.51.7 of whether counsel for GlenOaks could represent Bibbs due to the apparent conflict between Bibbs' affidavit and the position of GlenOaks. (Tr. Oct. 9, 2001 at 3-4, Ex. 11 to Pls.' Mot. Sanctions.) This court observed that it was "very troubled by Glen Oaks' failure to see the seriousness of [its] conduct" in failing to disclose its knowledge regarding Bibbs. (*Id.* at 7.) Although this court concluded that "Glen Oaks had no intention of ever correcting the false impression that they had created with the plaintiffs," the issue of sanctions arising from GlenOaks' failure to disclose locating Bibbs in October, 2000 was expressly reserved until the conclusion of the case in order to determine whether there was a pattern or other circumstances that would cause the court "to question whether or not the obligations of counsel with respect to disclosures have been met." (*Id.* at 8-11.)

Just two months after the court's ruling with regard to Bibbs, however, the parties were back before the court with another newly uncovered witness, Cynthia Schultz, who by that point had become Cynthia Schultz Auble. (Dec. 13, 2001 Minute Order.)[Dkt# 314.]; Schultz Auble Aff., Ex.

4 to GlenOaks' Res. Pls.' Mot. Sanctions.) One of Plaintiffs' attorneys, John Partelow, had located and contacted Schultz Auble in late November 2001. (*See* Partelow Aff. at 1-2, Ex. 1 to Pls.' Resp. GlenOaks' Request Withhold Produc. Schultz Docs.)[Dkt# 315.] It is undisputed that during that conversation Schultz Auble informed Partelow that she was not represented by an attorney. (*Id.*; Schultz Auble Aff., ¶ 4, Ex. 1 to GlenOaks' Reply Supp. Request Withhold Produc. Certain Docs.) She also said that she was willing to speak with him at another time about her recollection. (*Id.*) Following her conversation with Partelow, Schultz Auble contacted "the hospital" about the communication. (GlenOaks' Resp. Pls.' Mot. Sanctions at 6.) Claims Coordinator Rendl told Schultz Auble not to talk to Plaintiffs' counsel until she had talked to an attorney. (Schultz Auble Dep. at 260, Ex. B to Pls.' Reply Supp. Mot. Sanctions.) Rendl and one of GlenOaks' attorneys from the Donahue Firm, Sheri Arrigo, then spoke with Schultz Auble regarding the conversation with Partelow, and their representation of her. (GlenOaks' Resp. Pls.' Mot. Sanctions at 6.) On December 6, 2001, counsel for GlenOaks faxed a letter to Plaintiffs' counsel advising,

> "Cynthia Abell [*sic*], former emergency room technician at Glen Oaks [*sic*] Hospital, has asked us to represent her in connection with [this lawsuit]. Ms. Abell [*sic*] indicated that you had recently contacted her to discuss this case. Any further communications regarding Ms. Abell [*sic*] should be directed to our office."

(Dec. 6, 2001 letter from S. Arrigo to P. Ouimet, Ex. 3 to Pls.' Resp. GlenOaks' Request Withhold Produc. Schultz Docs.) Arrigo made no reference to Huang's conversation with Schultz Auble nine months earlier. (*Id.*)

On December 13, 2001, GlenOaks was ordered to produce to Plaintiffs all documents regarding communications with Schultz Auble about the lawsuit and a privilege log with regard to any documents GlenOaks asserted were protected from such discovery. (Dec. 13, 2001 Minute

Order.) The next day, Schultz Auble executed an affidavit attesting to her communication with an unnamed attorney representing GlenOaks in early 2001, and her understanding "at all times" that the unnamed attorney represented her for the purpose of the instant litigation. (Schultz Auble Aff. at 1-2, Ex. 1 to GlenOaks' Reply Supp. Request Withhold Produc. Certain Docs.) Schultz Auble's affidavit states that when contacted in February, 2001 by an attorney on behalf of GlenOaks (apparently a reference to Huang), Schultz Auble requested that the attorney represent her "in connection with this matter and he agreed to do so." (Schultz Auble Aff. ¶ 3.) The affidavit also states, "Then and at all times thereafter, I understood that the hospital's attorneys were also my attorneys and were acting on my behalf." (*Id.*) In an apparent effort to explain the inconsistency between these statements and the undisputed fact that she told Partelow that she was not represented by an attorney, the affidavit states that Reddick's attorney said he wanted to talk to her about the "murder case" regarding Mr. Reddick's death, and she assumed that he was asking if she had her own attorney for a "murder case." (*Id.* ¶ 4.) Extensive and heated briefing followed regarding whether GlenOaks again had failed its obligations of supplemental disclosure and whether Schultz Auble was ever represented by GlenOaks' counsel.

In that briefing, Plaintiffs strenuously argued for production from GlenOaks of documents reflecting information obtained from Schultz Auble in early 2001, insisting that Schultz Auble declared as recently as their December 2001 contact with her that she was not represented by an attorney, and that even if a work product claim applied to any documents reflecting the communication, such protection was overcome both by Plaintiffs' substantial need for the information, and as a sanction against GlenOaks for failing to update its disclosure regarding Schultz Auble. (*See* Plaintiffs' Resp. GlenOaks' Request Withhold Produc. Schultz Docs.)

GlenOaks, on the other hand, insisted that the Huang letters regarding Schultz Auble were attorney-client privileged and attorney work product, arguing that an attorney-client relationship had formed in early 2001 between Schultz Auble and GlenOaks' attorneys. (GlenOaks' Reply Supp. Request Withhold Produc. Certain Docs. at 3.) GlenOaks blamed its first set of attorneys, Ungaretti & Harris, for the failure to supplement, arguing:

> GlenOaks Medical Center acknowledges and sincerely regrets that its former counsel apparently did not promptly advise plaintiffs' counsel of the updated whereabouts of this witness or make her available for deposition. GlenOaks Medical Center is now aware and sincerely regrets that its former counsel similarly did not promptly advise plaintiffs of the updated whereabouts of Mr. Bibbs. GlenOaks Medical Center takes very seriously its affirmative duty under the Federal Rules to disclose material information. Significantly, GlenOaks Medical Center has discharged its former attorneys and obtained new counsel. .... It would be unfair to sanction the hospital for any failings on the part of its former counsel of which it was not aware and certainly did not direct or approve.

(*Id.* at 6-7.)

From December, 2001 through February, 2002, the parties argued to the court about the status of Schultz Auble as a client of GlenOaks' counsel. On January 16, 2002, upon leave of court, Stephen Huang, the attorney who had contacted Schultz Auble in early 2001, was deposed on that issue. (*See* Huang Dep., Ex. A to Pls.' Supp. Resp.)[Dkt# 319.] At his deposition, Huang testified that although he understood that he represented Schultz Auble in some fashion, he never offered nor agreed to represent her, and he never informed counsel for Plaintiffs that he had contacted and interviewed her until after he was contacted by Plaintiffs' counsel. (Huang Dep. at 12-14, 45-46.)

On February 4, 2002, GlenOaks was ordered to produce to Plaintiffs' counsel the Huang letters reflecting his communications with Schultz Auble, with certain portions redacted to protect

counsel's mental impressions. (Feb. 4, 2002 Minute Order.)[Dkt# 327.] This court found the facts

conveyed by Schultz Auble to Huang not privileged. (Tr. Feb. 4, 2002 at 10, Ex. 12 to Pls.' Mot.

Sanctions.) Also, based on the facts before the court including the text of Huang's letters, which do

not refer to any request by Schultz Auble for legal representation and give no indication that Huang

viewed himself as representing her, this court found "no basis to believe there was an attorney-client

relationship between GlenOaks' counsel and Ms. Schultz at the time the communication described

in those documents took place." (*Id.*) This court assumed that the Huang letters are attorney work

product, but nevertheless found two alternate and independent reasons to order their production.

First, Plaintiffs had a substantial need for the letters, since any deposition testimony Schultz Auble

could give in February, 2002 would be more than six years after Reddick's death, and also

undoubtedly would be affected by the fact that in the time since she had been found by the Plaintiffs,

she had been at the center of a heated battle between the parties. (*Id.* at 12.) Second, this court

found:

> [T]he evidence shows that Ms. Schultz is a former employee of Glen
> Oaks whose deposition the plaintiffs have been seeking since at least
> 1998. Glen Oaks' counsel knew of her whereabouts, at least by
> February of 2001, but failed to disclose that fact to the plaintiff. The
> last communication that Glen Oaks' counsel made to the plaintiff
> before the current controversy arose was an April 1999 letter in which
> Glen Oaks' counsel said they were unable to locate Ms. Schultz and
> did not have her telephone number.

(*Id.* at 11-12.) Production of the Huang letters was an appropriate sanction under Rule 37 and the

inherent authority of the court. (*Id.* at 13.) The issue of further sanctions against GlenOaks and/or

its counsel was reserved in order to allow the parties and GlenOaks' former counsel to file

submissions on the issue. (*Id.* at 14.)

13

Immediately following the court's ruling, GlenOaks's counsel announced their continued intention to withhold the Huang letters and to seek relief from the ruling in the district court. (*Id.* at 16.) GlenOaks' objection was ultimately denied. (Feb. 21, 2002 Minute Order.)[Dkt# 335.] In March, 2002, GlenOaks provided Plaintiffs with a summary of the facts contained in the Huang letters, and upon this court's order later supplemented the summary with additional information from the Huang letters. (*See* Mot. Clarify Record Regarding GlenOaks' Compliance Produc. of Huang Letter.)[Dkt# 360.]

In May and August, 2002, Schultz Auble's deposition was taken. (Schultz Auble Dep., Ex. B to Pls.' Reply Supp. Mot. Sanctions.) At that deposition, she had very limited present recollection of the events of the night Reddick died, and she testified that she "could not recall" even whether she told Huang various facts that Huang related in his letter.[6] In addition, Schultz Auble testified that she could not recall whether she had asked Huang or his firm to represent her in connection with the Reddick matter. (*Id.* at 249-251.) She testified that her understanding that the hospital's attorneys represented employees like herself came not from Huang but from her own assumption. (*Id.* at 253.)

The parties and former counsel for GlenOaks then filed their submissions on the issue currently under consideration, that is, whether further sanctions should be imposed upon GlenOaks and/or its two sets of counsel for their various discovery failures.

---

[6] For example, Huang's letters reported that Schultz Auble told him that she could not check Reddick's vital signs because the handcuffs prevented her from checking Reddick's pulse in the wrist area. At her deposition she could not recall saying that to Huang, and could not recall whether she took Reddick's pulse or not. (Schultz Auble Dep. at 111-13.)

## DISCUSSION

**I.     Sanctions May be Imposed Under Both the Federal Rules and the Court's Inherent Authority.**

The Federal Rules of Civil Procedure and the inherent authority of the courts to manage their own matters provide authority to sanction a litigant who fails to abide by its discovery obligations. Rule 37(c)(1) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

The sanctions authorized under Rule 37(b) include taking certain facts as established for purposes of the action, or barring the disobedient party from supporting or opposing designated claims or defenses. Fed. R. Civ. P. 37(b)(2) (A), (B).

A court has wide latitude in fashioning appropriate sanctions under Rule 37 for discovery violations. *See e.g., Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999); *Langley v. Union Electric Co.*, 107 F.3d 510, 515 (7th Cir. 1997). The court's discretion, however, is not unfettered. An award of sanctions must be just, in that it must be proportionate to the circumstances surrounding the litigant's failure to comply with its discovery obligations. *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998); *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 672 (7th Cir. 1996). "[T]he sanction selected must be one that a reasonable jurist, apprized of all the circumstances, would

15

have chosen as proportionate to the infraction." *In re Golant*, 239 F.3d 931, 937 (7th Cir. 2001)(quoting *Salgado*, 150 F.3d at 740).

Where a litigant knows or should have known that it was acting in violation of a court's discovery order, the court may find the litigant at fault for the violation. *Melendez*, 79 F.3d at 671. A knowing and willful violation of a court's discovery order warrants a finding of bad faith on the part of the recalcitrant litigant. *Golant*, 239 F.3d at 936. While the district court need not find bad faith in order to impose sanctions, sanctions are properly imposed upon a finding of willfulness, bad faith or fault. *Id.* at 936.

In addition to the authority under Rule 37, the court also has inherent authority "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)(quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-631 (1962)). This inherent power "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49; *Dotson v. Bravo*, 202 F.R.D. 559, 574 (N.D. Ill. 2001). Where there is bad faith conduct in the course of litigation that adequately can be sanctioned under the Rules, however, the court ordinarily should rely on the Rules rather than its inherent power. *Chambers*, 501 U.S. at 50.

Where the court finds that a litigant has violated Rule 26 by failing to supplement an earlier disclosure or discovery response, or where the litigant has committed a parallel discovery failure, the court may fashion an appropriate sanction from a wide range of options, so long as the sanction is just and proportionate to the circumstances surrounding the violation. In *Gaytan v. Kapus*, 181 F.R.D. 573 (N.D. Ill. 1998), the court explained:

> The federal courts' supervision of the discovery process, and the

16

courts' concomitant authority to upbraid those who do not play by the
rules, is rooted in the need for maintaining the integrity of the trial
process. Hence the impetus behind a court's deployment of sanctions
is not merely to punish a party for untoward acts or omissions; it is,
equally, to deter other litigants from disregarding the imperatives of
the Civil Rules.

181 F.R.D. at 580 (quoting *Thibeault v. Square D. Co.*, 960 F.2d 239, 245 (1st Cir. 1992).

## II.    GlenOaks Has Repeatedly Violated Its Discovery Obligations and the Orders of this Court.

Under the version of Rule 26(a)(1) in effect at the time, the parties were required to disclose,

without awaiting formal discovery requests, the names of persons likely to have discoverable

information relevant to the factual dispute as well as the nature and location of potentially relevant

documents and records. *See* Fed. R. Civ. P. 26(a)(1) Advisory Committee Notes, 1993 amendments.

Throughout this case, Rule 26(e), in turn, has required the parties to update their initial disclosures

and discovery responses "at appropriate intervals" upon learning that such disclosures were "in some

material respect . . . incomplete or incorrect and if the additional corrective information has not

otherwise been made known to the other parties during the discovery process or in writing." Fed. R.

Civ. P. 26(e)(1) and (2). The record demonstrates three instances where GlenOaks failed to abide by

these or parallel disclosure obligations.

### A.    GlenOaks Failed to Include the Quinn Report or the Witnesses Listed Therein in Its Initial Disclosures.

Pamela Quinn worked at GlenOaks and observed certain events the night that Robert Reddick

died. Her report memorialized her observations as well as her contemporaneous criticism of what

occurred. GlenOaks' litigation position is at least arguably contrary to several of the statements in

17

the Quinn Report.

GlenOaks did not include any reference to the Quinn Report in its initial disclosures despite that Rule 26(a) obligated it to do so. Similarly, GlenOaks did not identify its author, Pamela Quinn, its recipient, Debra McKenzie, or the other persons listed within the report (later identified as Scott Rowley, Laura Giancalone or Kathy Sheldon) as persons likely to have discoverable information. Likewise, GlenOaks failed to disclose the existence of the report and claim a specific basis for protecting it from discovery. It was not until the Plaintiffs learned through their own investigation of the existence of the Quinn Report, formally requested it in their fourth request to produce documents, and then moved to compel it, that GlenOaks acknowledged the Quinn Report and claimed for the first time that public policy and the work product doctrine protected it from discovery. (GlenOaks' Resp. Mot. Compel at 2-3.)[Dkt# 201.]

Ungaretti & Harris argues that sanctions should not be imposed because police interview summaries constituted GlenOaks' initial disclosures without objection from Plaintiffs. (Submission GlenOaks' Former Counsel at 3.) However, the District Judge then presiding specifically ordered the disclosures required by Rule 26(a)(1), and it was GlenOaks' obligation to comply fully with the Rule as ordered by the court. To the extent that the police interview summaries failed to disclose the information required by Rule 26(a)(1), those interviews summaries were inadequate to meet GlenOaks' obligations under Rule 26(a)(1). As soon as GlenOaks or its counsel knew or should have known that its disclosures were incomplete, it was obligated to supplement them. Fed. R. Civ. P 26(a), (e).

Plaintiffs suffered prejudice as a result of the delayed disclosure of the Quinn Report. It took Plaintiffs two years to discover on their own the existence of the report, and to seek to depose certain

witnesses listed within it. By the time Plaintiffs deposed the recipient of the report, Debra McKenzie, for example, she remembered next to nothing about it. (*See* McKenzie Dep., Ex. 2 to Pls.' Mot. Sanctions.) The judge then presiding could have sanctioned GlenOaks under Rule 37(c) in 1999 for failing to disclose the Quinn Report or the witnesses listed within it, but did not do so. As GlenOaks correctly points out, there is no evidence from the record that the court even considered imposing sanctions when it compelled production of the Quinn Report. However, the circumstances of that event are properly considered as part of the pattern that developed later in the course of this litigation. *Melendez*, 79 F.3d at 671 (considering evidence of earlier evasive discovery tactics in determining appropriate sanction for failure to disclose responsive document); *Thibeault*, 960 F.2d at 245 (finding appropriate district court's consideration of counsel's similar discovery violations in previous litigation).

## B. GlenOaks Failed to Supplement Its Disclosure Regarding the Location of Bernard Bibbs.

In 1999, Plaintiffs repeatedly asked GlenOaks in writing to produce Bibbs for deposition. Shortly before the scheduled close of discovery, counsel for GlenOaks advised Plaintiffs that it had been unable to locate Bibbs, and provided Plaintiffs both with the address where Bibbs "may reside" and the address of a Bibbs family member. Plaintiffs were invited "to take any necessary steps to schedule" Bibbs' deposition. (April 1, 1999 letter from S. Valukas to P. Ouimet, Ex. 5 to Pls.' Mot. Sanctions.)

In October, 2000, Rendl, GlenOaks' claims coordinator, not only found Bibbs, but spoke with him regarding his recollection of the night that Reddick died. Although Rendl informed Ungaretti

19

& Harris of her conversation with Bibbs, GlenOaks neither informed Plaintiffs of this contact, nor took any steps to make Bibbs available for deposition. Eight months later, Bibbs met with Plaintiffs' counsel who had found him on their own, and executed an affidavit attesting to his recollection of the night that Reddick died.

In denying GlenOaks' motion to strike Bibbs' affidavit and rejecting the Donahue Firm's assertion of an attorney-client relationship with Bibbs, this court ruled that GlenOaks had failed to seasonably update its prior disclosure regarding Bibbs as was required by Fed. R. Civ. Pro. 26(e). (Tr. Sept. 21, 2001 at 4-5, Ex. 11 to Pls.' Mot. for Sanctions.) In its subsequent submission regarding sanctions, GlenOaks insisted that since its counsel had located Bibbs at the address they previously had provided the plaintiffs, "there was no material information to disclose that was not already known to all parties in the process of discovery." (Statement of GlenOaks and its Counsel at 10.) That is not correct.

As soon as GlenOaks located and contacted Bibbs, a witness GlenOaks knew had long been sought by Plaintiffs, its previous statement regarding where Bibbs "may reside" became materially incomplete. *See* Fed. R. Civ. P. 26(e); *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, No. 00-C-5558, 2002 WL 1433584 at *6 (N.D. Ill. July 2, 2002)(Conlon, J.) (finding litigant required under Rule 26(e) to supplement prior response that documents "may" be in a warehouse upon litigant's finding of said documents in the warehouse). Furthermore, GlenOaks' counsel's statement that GlenOaks had been "unsuccessful" in efforts to contact Bibbs became clearly incorrect.

Ungaretti & Harris points out that Plaintiffs did not, in addition to sending the letters requesting his deposition, issue interrogatories seeking Bibb's present location. (Submission GlenOaks' Former Counsel at 8.) However, the fact that the statement requiring supplementation was

20

contained within counsel's correspondence regarding the scheduling of depositions does not change the analysis. *See Langley*, 107 F.3 at 514 (a Rule 37 analysis was not inappropriate in the absence of a formal discovery request where parallel circumstances existed, such as the exchange of letters requesting inspection of a piece of evidence). In *Margoles v. Johns*, 587 F.2d 885, 886-888 (7th Cir. 1978), the court found a Rule 37 sanction as severe as dismissal appropriate where the plaintiff had failed on multiple occasions to produce documents requested in letters by defendant's counsel in a case where discovery had proceeded "by stipulation and without subpoenas or formal demands." In this case, the information that subsequently needed supplementing was conveyed in correspondence exchanged between counsel for the purpose of arranging for discovery depositions. A Rule 37 analysis therefore applies.

Furthermore, conduct that abuses the judicial process may be sanctioned under the court's inherent authority. *See Chambers*, 501 U.S. at 50; *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993); *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, No. 00-C-5658, 2002 WL 1433717, at *4 (N.D. Ill. July 2, 2002)(Conlon, J.). GlenOaks' failure to supplement its statement about Bibbs when that statement no longer was complete or accurate violates the spirit of complete, non-evasive discovery embodied in the Federal Rules. It also implicates counsel's duties under Northern District of Illinois Local Rule 83.53.3. *See* N.D. Ill. Loc. R. 83.53.3 (11), (13) (2002) (forbidding lawyer from refusing to accede to reasonable request of opposing counsel that does not prejudice rights of lawyer's client, and from suppressing evidence that the lawyer or client is obliged to reveal or produce).

In arguing against the imposition of sanctions, GlenOaks asserts that it and its former counsel "reasonably assumed [after the April 1, 1999 letter] that if plaintiffs wanted to speak with Bibbs, they

would either issue a subpoena for his deposition, or request further assistance from the hospital in locating him." (*See* Statement GlenOaks and its Counsel at 9.) GlenOaks and its counsel do not so easily escape their obligations under the Federal Rules. It was GlenOaks' obligation to supplement its previous disclosures, not Plaintiffs' burden to continually renew their discovery requests. *See* Fed. R. Civ. P. 26(e); *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (finding plaintiff's argument that sanctions for failing to supplement were inappropriate since defendant's discovery request had not been renewed bordered "on the frivolous").

Ungaretti & Harris also argues that the disclosure obligations of Rule 26(a) were constricted in December, 2000 to require the parties only to disclose "information that the disclosing party may use to support its position." (Submission GlenOaks' Former Counsel at 8 (quoting Rule 26 Advisory Committee Notes). However, as discussed above, Rendl located Bibbs in October, 2000, which was before the December 1, 2000 effective date of the amendments to Rule 26. It is also not clear that GlenOaks' initial contact with Schultz Auble was after December, 2000; she testified in her deposition that she had a number of conversations with Huang, and may have been first contacted in 2000. (Schultz Auble Dep. at 79, 81, Ex. B to Pls.' Reply Supp. Mot. Sanctions.) In any event, this court rejects counsel's argument. When the District Judge ordered the parties to abide by the initial disclosure requirement of Rule 26(a)(1), the rule was not limited only to information the party may use to support its position. The parties' obligations under Rule 26(e) equal in breadth their initial disclosure requirements. The amendments to Rule 26(a) can not be understood to retroactively constrict a litigant's supplemental disclosure obligations under Rule 26(e) in the case where earlier statements no longer are complete or accurate. *See* Fed. R. Civ. Pro. 26(e) Advisory Committee Notes, 1993 amendments ("The obligation to supplement disclosures and discovery responses applies

whenever a party learns that its prior disclosures and responses are in some material respect incomplete or incorrect.")

GlenOaks' failure to correct its prior statement that it could not locate Bibbs when that statement was no longer accurate is sanctionable under Rule 37(c). *See Couvi's Drink Box Inc. v. Phillip Morris USA*, Civ. A. No. 94-0454, 1996 WL 277959 at * 1 (E.D.L.A. May 10, 1996)(Wilkinson, M.J.) (finding appropriate the imposition of Rule 37 sanctions including costs of plaintiff's private investigator where defendant knew of witness' location but failed to provide it in response to specific and repeated requests).

**C.    GlenOaks Failed to Supplement Its Disclosure Regarding the Location of Cynthia Schultz Auble.**

As many times as Plaintiffs asked GlenOaks to produce Bibbs for deposition, they also asked GlenOaks to produce Cynthia Schultz Auble. When GlenOaks informed Plaintiffs shortly before the then-scheduled close of fact discovery that it could not locate Bibbs, it also reported being unable to locate Schultz Auble. Although GlenOaks reported that her telephone number was "unknown," it provided Plaintiffs with Schultz Auble's "last known address," and as it had done with Bibbs, it invited Plaintiffs "to take any necessary steps to schedule" Schultz Auble's deposition. (April 1, 1999 letter from S. Valukas to P. Ouimet, Ex. 5 to Pls.' Mot. Sanctions.)

As was the case with Bibbs, GlenOaks' Rendl ultimately did find Schultz Auble. Then GlenOaks' attorney, Stephen Huang, interviewed Schultz Auble at length regarding her recollection of the events surrounding Reddick's death. Based on Schultz Auble's statements as recorded by Huang in March 2001, GlenOaks and its counsel must have anticipated that her deposition would not

23

be helpful to GlenOaks' case. (*See* Submission GlenOaks' Former Counsel at 8.)

Despite their interaction with her, GlenOaks' first set of attorneys, Ungaretti & Harris, failed to supplement its earlier statement to Plaintiffs concerning Schultz Auble. Similarly, when the Donohue Firm substituted for Ungaretti & Harris in May 2001, its attorneys failed to notify Plaintiffs that Schultz Auble had been found. Particularly significant is the fact that, even after this court ruled in October, 2001 that GlenOaks' failure to disclose its contact with Bibbs violated the Federal Rules and counsel's ethical obligations, GlenOaks nonetheless failed to disclose its having located Schultz Auble. Thus, not only did GlenOaks' conduct violate the supplemental disclosure obligations of Rule 26(e) and Local Rule 83.53.3, it also violated a specific discovery order of this court.

When confronted with Plaintiffs' discovery of Schultz Auble in late 2001, GlenOaks continued to argue that it had done nothing wrong. In fact, GlenOaks insisted that its attorneys represented Schultz Auble, arguing that an attorney-client relationship had been formed at the time of Huang's communication with her earlier in the year. That argument was found to be without basis in fact. (Tr. Feb. 4, 2002 at 10, Ex. 12 Pls.' Mot. Sanctions.) The depositions of Schultz Auble and Huang, as well as the statements by Ungaretti & Harris (*see* footnotes 4 and 5 above), confirm the correctness of that finding and demonstrate that GlenOaks' objection based on the claimed attorney-client relationship was frivolous. The obvious purpose of making that frivolous objection was to avoid disclosing the facts conveyed to Huang by Schultz Auble, because they are potentially damaging to GlenOaks. The documents filed by the Donahue Firm with the court on behalf of GlenOaks asserting the claimed attorney-client relationship between Schultz Auble and counsel for GlenOaks as an objection to producing the Huang letters, for example, GlenOaks' Reply in Support of its Request to Withhold Production of Certain Documents, were, with respect to that objection,

24

signed in violation of Rule 26(g).[7]

While the Donohue Firm had argued that GlenOaks had no duty to supplement with regard to Bibbs, it shied away from a similar argument with regard to Schultz Auble, instead placing blame with Ungaretti & Harris for GlenOaks' failure to supplement. (*See* GlenOaks' Reply Supp. Request Withhold Produc. Certain Docs. at 6.) The Donohue Firm went so far as to imply that GlenOaks had discharged its first set of attorneys over such discovery failures. (*Id.* at 6-7.) The Donahue Firm also argued that any failure on its part to supplement earlier disclosures had been inadvertent, noting that Plaintiffs' counsel had not renewed their request for Schultz Auble's deposition since 1999. (GlenOaks' Supp. Reply in Supp. Request Withhold Privileged Docs. at 9.)[Dkt# 321.]

GlenOaks, like all litigants, chose its sets of counsel in this case at its peril. *See e.g., Link v. Wabash Railroad Co.,* 370 U.S. 626, 633-634 (1962); *Comiskey v. JFTJ Corp.,* 989 F.2d 1007, 1010 (8th Cir. 1993) (affirming sanction of default judgment over defendant's argument that previous failures to comply with discovery solely were the fault of defendant's first counsel). "It is a well established principle that a party is responsible for the actions and conduct of his or her counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's inactions." *Comiskey,* 989 F.2d at 1010 (internal quotation omitted). Moreover, "that a party suffers the consequences for its counsel's misconduct is part and parcel of our system of representative litigation." *Barnhill,* 11 F.3d at 1368, n. 9. In this case, GlenOaks' Rendl was

---

[7] Rule 26(g)(2) provides in part that every discovery request, response or objection shall be signed by an attorney of record or party if the party is unrepresented, and that the signature constitutes a certification that, to the best of the signer's knowledge, information and belief, formed after a reasonable inquiry, that the request, response or objection is consistent with these rules and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and is not interposed for an improper purpose.

personally involved in this process, as discussed further below.

Plaintiffs repeatedly sought the deposition of Schultz Auble since at least January, 1999. As soon as GlenOaks located and interviewed her in February, 2001, GlenOaks' April 1999 statement that Schultz Auble's phone number was unknown and its provision of a last known address became materially incomplete or incorrect. GlenOaks was obligated to seasonably supplement its earlier statement.

This court's October 9, 2001 ruling specifically advised GlenOaks and the Donahue Firm that violations of Rule 26(e)'s supplemental disclosure obligations would not be tolerated, and would result in the imposition of Rule 37 sanctions. (Tr. Oct. 9, 2001 at 7-9, Ex. 11 to Pls.' Mot. Sanctions.) While reserving the issue of sanctions with regard to GlenOaks' failure to disclose its contact with Bibbs, this court unequivocally ruled that "concealing the whereabouts of a material witness whom Glen Oaks' counsel . . . claims is and was their, quote, 'client,' close quote, is a serious breach of professional responsibility to the court as well as opposing counsel." (Tr. Sept. 21, 2001 at 6, Ex. 10 to Pls.' Mot. Sanctions.) In the face of this express ruling, GlenOaks nevertheless failed to disclose its contact with Schultz Auble.

While three months passed between Huang's interview of Schultz Auble and Ungaretti & Harris' departure from this case, double that time passed between the Donohue Firm's introduction to the case and Plaintiffs' fortuitous discovery of the witness. Just as GlenOaks' first counsel was derelict in their supplemental disclosure obligations with regard to Schultz Auble, so too was GlenOaks' second set of attorneys. Had the nondisclosures been caused solely by Ungaretti & Harris, as GlenOaks argues, surely the Donohue Firm would have supplemented Ungaretti & Harris' disclosures when it substituted as counsel for GlenOaks, especially if, as hinted, the reason for the

26

change of counsel was dissatisfaction with performance. The Donohue Firm did not do so, and inadvertence is no excuse for its failure. *See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1229 (10th Cir. 2001) (finding plaintiff did not intentionally withhold information does not excuse plaintiff from continuing duty to disclose). GlenOaks' second counsel performed no better than its first, and Plaintiffs never received the supplemental disclosure to which they were entitled.

In light of the court's express finding that such failure constituted a sanctionable violation of Rule 26(e) and in light of GlenOaks' continued assertion that it represented Schultz Auble, GlenOaks' failure to disclose its contact with Schultz Auble can not be seen as inadvertent, but must be seen as a willful violation of Rule 26, Local Rule 83.53.3 and this Court's October 9, 2001 ruling on the part of GlenOaks and the Donohue Firm. *See e.g., In re Golant*, 239 F.3d at 936 (finding that failure of litigant to produce document it knew or should have known was required by court's discovery order, supports conclusion that litigant acted in bad faith); *Smith v. Rowe*, 761 F.2d 360, 366 (7th Cir. 1985) (finding counsel's continued lack of preparedness and failure to supplement his pretrial submission after already being sanctioned and being warned by the court amounted to a "willfulness in failing to comply with the court's order"); *Rodriguez v. M&M/Mars*, No. 96-C-1231, 1997 WL 349989 at *2 (N.D. Ill. June 23, 1997)(Gettleman, J.) (for purposes of imposing sanctions, bad faith is conduct which either is intentional or in reckless disregard of one's obligations).

Plaintiffs suffered a significant prejudice by the delay in discovering Cynthia Schultz Auble. By the time Plaintiffs' counsel located her, six years had passed since Reddick died at GlenOaks. Several more months passed by the time Schultz Auble was deposed. The passage of such a significant amount of time surely affects a witness' memory. Schultz Auble's May and August, 2002 deposition testimony demonstrates her present inability to recall the events of which she spoke so

27

clearly when interviewed by Huang in early 2001. As a direct result of GlenOaks' discovery failures, therefore, Plaintiffs have been deprived of the information once possessed by an eyewitness to the disputed events that are at the heart of this lawsuit. Further, the firestorm created by GlenOaks following Plaintiffs' first contact with Schultz Auble and centering around her subsequent affidavit likely also affects her ability to testify impartially. To extent that Schultz Auble testified in her deposition that she did not state to Huang certain information that was reported by Huang to Parody, it can be inferred that those denials are influenced by, if not the direct result of, that controversy. In contrast, there would be no motivation by Huang not to report correctly what Schultz Auble told him.

GlenOaks was previously ordered to produce Huang's letters to Plaintiffs, both because Plaintiffs had demonstrated a substantial need for the information in them, and because such disclosure was an appropriate initial sanction for GlenOaks' failure to supplement with regard to Schultz Auble. (Tr. Feb. 4, 2002 at 12-13, Ex. 12 to Pls.' Mot. Sanctions.) *See also Gotch v. Ensco Offshore Co.*, 168 F.R.D. 567, 572 (W.D. La. 1996) (finding that counsel's failure to identify a certain statement in response to an interrogatory requesting it, and counsel's subsequent failure to amend the earlier response constitutes a legal and ethical violation sufficient to vitiate any work product protection as to the statement). In light of the pattern of discovery violations and the resulting prejudice both to the Plaintiffs and to the just and expeditious administration of this litigation, this court finds that further sanctions under Rule 37(b) and (c) now are appropriate.

### III. Because GlenOaks Repeatedly Violated its Discovery Obligations, Sanctions Are Imposed Accordingly.

When this court first admonished GlenOaks for its failure to supplement under 26(e), it explicitly advised GlenOaks that the issue of sanctions was reserved in order to determine whether there was a pattern or other circumstances to cause the court to "question whether or not the obligations of counsel with respect to disclosures have been met." (Tr. Oct. 9, 2001 at 11, Ex. 11 to Pls.' Mot. Sanctions.) The court expressed concern at the time that GlenOaks and its past and present counsel did not appear to comprehend their obligations under several rules including Federal Civil Procedure Rule 26 and Local Rule 83.53.3. (*Id.* at 9.) After several rounds of motions to compel, multiple briefs on whether witnesses are represented by GlenOaks and whether their statements are discoverable, and a direct violation of this court's ruling, this court is convinced that GlenOaks and its counsel either do not comprehend their disclosure obligations, or have opted to act in disregard of them. GlenOaks knew or should have known that failing to disclose information regarding Schultz Auble violated its disclosure obligations under the Rules and an order of this court, and thus its actions in this regard were in bad faith.

While this court finds that GlenOaks' first set of attorneys, Ungaretti & Harris, were derelict in its supplemental disclosure obligations both with regard to Bibbs and Schultz Auble, GlenOaks and its present counsel can not avoid the consequences of their discovery failures by blaming GlenOaks' first set of attorneys. Most of the discovery failings at issue in the present sanctions motion could have been avoided had the Donohue Firm properly navigated their client through discovery. The Donohue Firm not only failed to timely supplement GlenOaks' disclosures about Bibbs and Schultz Auble as their predecessors had, but also took affirmative steps to block Plaintiffs'

access to such discoverable information once Plaintiffs' own investigation brought it into their reach. It was the Donohue Firm acting on behalf of GlenOaks who filed the frivolous motion to strike the Bibbs affidavit and the papers asserting an attorney-client relationship between Huang and Schultz Auble, and who knowingly and willfully violated Rule 26(e) as well as this court's October 9, 2001 ruling.

GlenOaks itself is a sophisticated litigant that has played an active and critical role in discovery throughout this case. When GlenOaks' attorneys wanted to find Bibbs and Schultz Auble, it relied on Rendl to locate and contact the witnesses. (*See* GlenOaks' Resp. Pls.' Mot. Sanctions at 3-5.) Rendl further specifically attested to her involvement "in the defense of medical malpractice claims against GlenOaks Hospital," and to her work as a liaison between witnesses such as Bibbs and Schultz Auble and counsel for GlenOaks. (*See* Rendl Aff., Ex. 2 to GlenOaks' Resp. Pls.' Mot. Sanctions.) In addition to its attorneys, therefore, GlenOaks itself bears responsibility for its discovery failings.

## CONCLUSION

For all of the aforementioned reasons, Plaintiffs' Motion for Sanctions is granted. Pursuant to Rule 37(b) and (c), and this court's inherent authority to ensure the just and expeditious resolution of this case, this court imposes sanctions upon GlenOaks and its counsels as follows:

(1)     GlenOaks former counsel, Ungaretti & Harris, is hereby ordered to pay Plaintiffs an amount sufficient to reimburse Plaintiffs for their costs in finding Bernard Bibbs and Cynthia Schultz Auble that were incurred after the date that GlenOaks had located the witnesses;

(2)     GlenOaks and the Donohue Firm are hereby ordered to pay Plaintiffs' reasonable attorneys'

fees and costs incurred in (a) defending GlenOaks' motion to strike the Bibbs affidavit and GlenOaks' motion for sanctions; (b) moving to compel production the Huang letters and responding to GlenOaks' request to withhold those documents; deposing Stephen Huang (both depositions); and briefing the present motion for sanctions. This obligation shall be shared evenly by both the client and the attorneys.

(3) Plaintiffs will be entitled to use the March 13, 2001 draft letter from Stephen Huang to Joan Parody and the March 19, 2001 final version of that letter at the trial of this case as a recorded recollection of Cynthia Schultz Auble pursuant to Fed. R. Evid. 803(5). However, the portions reflecting counsel's mental impressions shall be redacted as previously ordered.

(4) With respect to any amounts ordered to be paid herein, Plaintiffs and GlenOaks and its present and former counsel are directed to proceed pursuant to Local Rule 54.3 (d), (e) and (f). Any statement of fees and costs sought pursuant to this order must be served upon GlenOaks' present and former counsel no later than April 30, 2003.

**IT IS SO ORDERED.**

GERALDINE SOAT BROWN
**United States Magistrate Judge**

DATED: March 28, 2003

31